CHARLES D. NAYLOR, (SBN 62243)
LAW OFFICES OF CHARLES D. NAYLOR
A Professional Corporation
11 Golden Shore Drive, Suite 350
Long Beach, California 90802
Telephone:  (310) 514-1200
Facsimile:   (310) 514-1837
E-Mail:      cnaylor@naylorlaw.com

In Association with:

Aksana M. Coone, Esq. (SBN 190125)
LAW OFFICES OF AKSANA M. COONE
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9650
Facsimile: (310) 954-9008
Email:  aksana@coonelaw.com

Attorneys for Plaintiff,
SUSAN B. HODGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN B. HODGE<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>PRINCESS CRUISE LINES, LTD., SHEVAUN VAN ZYL, M.D., AND DOES 1 -10,<br><br>　　　　　Defendants. | **Case No.:   2:24-cv-00620**<br><br>**COMPLAINT FOR DAMAGES FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL**<br><br>Action Filed:<br>Judge:<br>Magistrate: |

COMES NOW the plaintiff, SUSAN B. HODGE (hereinafter "Plaintiff") and for a cause of action against defendants, and each of them, complains and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action seeking damages in excess of $75,000, exclusive of interest, costs, and attorney's fees between citizens of different States. Federal subject matter jurisdiction arises under and is by virtue of diversity citizenship pursuant to 28 U.S.C. § 1332. The action also arises under maritime law such that the Court has admiralty jurisdiction under 28 U.S.C. § 1333 and the general maritime law of the United States.

2. Venue is proper in this District pursuant to 28 U.S.C § 1391(b) because Defendant PRINCESS CRUISE LINES, LTD. is a foreign corporation with its principal place of business in Los Angeles County, California and based on the forum selection clause included in the terms of Defendant's passage contract requiring that all disputes "shall be litigated before the United States District Courts for the Central District of California in Los Angeles."

## THE PARTIES

3. At all times herein material, Plaintiff was and is a resident and citizen of the State of New York.

4. At all times herein material, Defendant PRINCESS CRUISE LINES, LTD., (hereinafter "PRINCESS") was a corporation doing business in, and with its principal place of business in the County of Los Angeles.

5. At all times herein material, Defendant PRINCESS is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports within the continental United States.

6. On or about January 28, 2023 and at all times herein material, Defendant PRINCESS owned, managed, operated, maintained, supervised, inspected and/or controlled the ocean-going passenger vessel known as *Royal Princess* which was, at all times herein material, operating on navigable waters of the United States and the high seas.

///

7. At all times herein material, Defendant SHEVAUN VAN ZYL, M.D. (hereinafter "VAN ZYL") is and was a resident and citizen of an unknown state and/or country and was an employee, apparent agent and/or actual agent of Defendant PRINCESS, working aboard *Royal Princess* as a ship's physician and acting within the course and scope of said employment and/or agency.

8. Doe Defendants 1 through 10, and each of them, were at all times material herein the agents, servants, employees, independent contractors, co-conspirators, joint tortfeasors, management companies, subsidiaries, and/or joint venturers, of the remaining defendants, and each of them, and were at all times material, acting within the authorized course, scope, and purpose of said conspiracy, agency, employment or relationship, and/or that all said acts were subsequently performed with knowledge, acquiescence, ratification and consent of the respective principals, and the benefits thereof accepted by said principals.

9. The full extent of the facts linking the fictitiously designated Defendants, Does 1 through 10, with the causes of action alleged herein are unknown to the Plaintiff, and the true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise of Does 1 through 10, inclusive, are unknown to Plaintiff. Plaintiff therefore sues said defendants by such fictitious names. Plaintiff is informed and believes that each of the defendants designated herein as a "Doe" is negligently, wantonly, recklessly, tortuously and unlawfully responsible in some manner for the events and happenings herein referred to, and/or is strictly liable in tort for injuries and damages with respect to Plaintiff as herein alleged. Plaintiff will hereafter ask leave of Court to amend this Complaint to show said defendants' true names and capacities and to state the manner in which each fictitious defendant is so responsible when the same have been ascertained.

///

///

## GENERAL ALLEGATIONS

10. At all times herein material, Defendant PRINCESS was a member of the Cruise Lines International Association ("CLIA").

11. At all times herein material, Defendant PRINCESS was required to have on board, a full-time, emergency medical professional, pursuant to the Cruise Industry Passenger Bill of Rights. Article 3 of the International Cruise Line Passenger Bill of Rights provides as follows: "The right to have available on board ships operating beyond rivers or coastal waters full-time, professional emergency medical attention, as needed until shore side medical care becomes available."

12. The requirement to carry full-time emergency medical professional onboard PRINCESS vessels, constitutes a formal adoption of cruise industry practices. In the words of CLIA's president and CEO

> The Cruise Industry Bill of Rights codifies many longstanding practices of CLIA members and goes beyond to further inform cruise guests of the industry's commitment to their comfort and care." Thus, "[b]y formally adopting industry practices into a 'Passenger Bill of Rights,' CLIA is further demonstrating consistent practices across CLIA member lines. The cruise industry is committed to continue to deliver against the high standards we set for ourselves in all areas of shipboard operations."

13. The International Cruise Line Passenger Bill of Rights is a requirement imposed on all CLIA members. Adoption is a condition of membership. For that reason, every single cruise line, including PRINCESS, adopted it.

14. As a result of the requirement for PRINCESS to have on board, a full-time, emergency medical professional, Defendant PRINCESS did not carry Defendant VAN ZYL on board *Royal Princess* for the convenience of its passengers; rather, Defendant PRINCESS employed and/or contracted with

and/or provided Defendant VAN ZYL on board *Royal Princess* in connection with its operation of the vessel as part of Defendant PRINCESS' business of operating cruise ships.

15.  All in all, Defendant PRINCESS is in the business of providing medical care.  Like other amenities offered aboard its ships (i.e. bars, restaurants, spas), Defendant PRINCESS also offers passengers modern medical facilities onboard its ships for profit.  This was recognized by the Eleventh Circuit Court of Appeals in the case of *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1244, n. 14 (11th Cir. 2014) (emphasis added):

> What's more, we suspect that Franza's allegations only scratch the surface. We have no difficulty imagining other cases in which additional evidence could demonstrate a cruise line's medical expertise—particularly since, in the public domain, cruise lines routinely claim to possess such knowledge. *See, e.g.,* Peltz, *Has Time Passed Barbetta by?,* at 19 (<u>quoting statement by Director of Princess Cruise Lines Medical Department claiming that "major cruise lines have designed modern medical facilities comprising several ICUs, computerized radiology, and sophisticated laboratories" and "have achieved accreditation to international health care standards and ISO 9001 certification"</u>); *id.* at 14–16 (noting that sixteen major cruise lines cooperated with American College of Emergency Physicians to develop and adopt "industrywide guidelines" addressing "unique needs and limitations of shipboard medical infirmaries"); . . .We do not credit as fact any information not pled in the complaint, but we note that another plaintiff could have cited any of this information to rebut the basic assumption that cruise ships are not in the business of providing medical services.

16. Defendant PRINCESS invited the general public, including the Plaintiff, to become passengers aboard *Royal Princess* in exchange for a monetary charge.

17. As part of providing cruise vacations, Defendant PRINCESS advertised that the ship's medical facility was available and staffed with qualified and competent physicians and nurses. Defendant PRINCESS represented to its passengers and prospective passengers on its website that "All of our onboard medical facilities meet or exceed the standards established by the American College of Emergency Physicians. Our onboard medical facilities are staffed by full-time registered doctors and nurses."

18. At all times herein material, Defendant PRINCESS charged passengers for medical services it provided, and such charges are added to passenger shipboard accounts. As such, Defendant PRINCESS is in the business of providing medical services for profit. In fact, Defendant PRINCESS charged Plaintiff a fee for the medical care provided by Defendant VAN ZYL and the medical staff aboard *Royal Princess* as well as for medication. All of these medical care related charges were charged directly to the Plaintiff's onboard account or "Folio" with Defendant PRINCESS.

19. At all times herein material, Defendant PRINCESS owned, operated, controlled, supervised, and/or maintained the medical facility aboard *Royal Princess*. Defendant PRINCESS maintained a shore side medical department with a Chief Medical Officer responsible for overseeing the operations of the shipboard medical center including the selecting, purchasing, and maintaining the medical equipment and medications contained therein, recruitment, credentialing and staffing of shipboard medical centers with physicians and nurses; evaluations, training and coaching of shipboard physicians and acting as a resource to the shipboard medical personnel and providing guidance and instruction in the event of a medical emergency.

///

20. At all times herein material Defendant PRINCESS was vicariously liable for the negligence of Defendant VAN ZYL and all other doctors, nurses, paramedics, and other personnel working in the medical facility aboard *Royal Princess*, including Doe Defendants 1 through 10, who were employees, apparent agents, and/or actual agents of Defendant PRINCESS, acting within the course and scope of their employment and/or agency.

21. At all times herein material, Defendant PRINCESS has control and/or the right to control any and all persons working in its medical department, including Defendant VAN ZYL.

22. Plaintiff relied upon Defendant PRINCESS' representations regarding its available shipboard medical facility with its qualified and competent physicians in her decision to purchase the subject cruise and in her subsequent decision to seek medical care while aboard the vessel.

## THE INCIDENT

23. On or about January 28, 2023, Plaintiff, an 83-year-old fare paying passenger aboard the *Royal Princess* (hereinafter "Vessel"), reported to the ship's medical center with complaints of chest pain and shortness of breath.

24. The medical staff aboard the ship, specifically Defendant VAN ZYL, performed a cursory examination, without utilizing an electrocardiogram (EKG) or any other cardiac diagnostic tests, and overlooked Plaintiff's past medical history and risk factors for coronary artery disease (CAD), including her age, family history, high blood pressure, high cholesterol, obesity, diabetes and sedentary lifestyle, misdiagnosed Plaintiff's heart attack with gastric reflux disease (GERD) and failed to properly manage the cardiac condition, including immediately starting Plaintiff on thrombolytics, bed rest and aspirin to minimize damage to the myocardium (heart muscle) due to ischemia, and arranging for a prompt medical evacuation ashore for an angioplasty or other appropriate emergency care to reduce the amount of damage to the heart muscle, and instead

prescribed Metoclopramide, a gastric sedative, Omeprazole, a gastric acid reducer and an antacid tablet. No medical evacuation was considered or recommended.

25. Plaintiff's visit began at approximately 7:21 p.m. and lasted for approximately 18 minutes. The Vessel docked in Ensenada, Mexico the next day, on January 29, 2023, at approximately 4:00 p.m. Plaintiff's visit in the Vessel's medical center therefore occurred while the Vessel was within close proximity to medically evacuate Plaintiff via a helicopter, or at the port of Ensenada the following day, to a fully staffed hospital available there.

26. Following the advice of the vessel's medical staff, Plaintiff continued with her voyage. On a subsequent day, Plaintiff called the ship's medical center requesting more pills as her symptoms had not improved and was advised there were no more appointments available. Unbeknownst to Plaintiff, she had suffered a heart attack aboard the Vessel which required appropriate care and medication to prevent permanent heart damage.

27. On or about February 6, 2023, upon her return home at the completion of the cruise, Plaintiff relying on the Defendant VAN ZYL's diagnosis of a gastric reflux disease as the cause of her symptoms, visited with a gastroenterologist who immediately, upon examination, recognized Plaintiff's symptoms were cardiac and not gastric, referred Plaintiff to a cardiologist. The cardiologist performed an EKG which revealed an acute anterior wall MI (myocardial infarction) with ST elevation indicating a total blockage of involved coronary artery and diagnosed Plaintiff as having suffered a heart attack. Plaintiff was immediately referred to a hospital emergency room for treatment and advised she had but hours to live.

28. Defendant PRINCESS advertises to its passengers that it is capable of evacuating patients who have medical emergencies on board their vessels to a land-based medical facility. Defendants PRINCESS and VAN ZYL failed to

properly diagnose Plaintiff with a heart attack, failed to provide appropriate and universally recognized medical care for the condition aboard the Vessel, and failed to identify and medically evacuate Plaintiff to an appropriate medical facility ashore that was staffed and equipped to treat Plaintiff effectively.  As a consequence, Plaintiff, experienced a prolonged, unnecessary and ultimately serious and life-threatening delay in her diagnosis and treatment and was thereby deprived of receiving prompt medical treatment which would have reduced or eliminated the residual symptoms and heart damage she now experiences as a result of the heart attack she had suffered aboard the Vessel.

29.   As a direct and proximate result of the incident alleged herein and the negligence, carelessness and the acts and omissions of Defendants PRINCESS, VAN ZYL and Does 1 through 10, and each of them, and of the negligent medical care provided, as hereinabove alleged, Plaintiff was hurt and injured in her health, strength and activity, sustaining severe physical injury to her body, and shock and injury to her nervous system and person, all of all of which injuries have caused and continue to cause mental, physical and emotional pain and suffering, loss of enjoyment of life, inconvenience in the normal pursuits and pleasures of life, humiliation and embarrassment to plaintiff.  Plaintiff is informed and believes, and thereupon alleges that some or all of her injuries will result in permanent damages, disability and pain and suffering and general damages to Plaintiff in an amount to be proven at the time of trial.

30.   As a further direct and proximate result of the incident alleged herein and the negligence, carelessness and the acts and omissions of Defendants PRINCESS, VAN ZYL and Does 1 through 10, and each of them, and of the negligent medical care provided, as hereinabove alleged, it was necessary for Plaintiff to receive medical care and treatment, and Plaintiff did sustain an expense for such medical treatment, care, hospitalization, medicines, and for other and further medical and incidental care.  Plaintiff alleges the cost of the

medical care and treatment and other special damages according to proof at trial.

31. Plaintiff is informed and believes, and based thereupon alleges, that as a further direct and proximate result of the incident alleged herein and the negligence, carelessness and the acts and omissions of Defendants PRINCESS, VAN ZYL and Does 1 through 10, and each of them, and of the negligent medical care provided, as hereinabove alleged, she will necessarily require additional medical care, hospitalization, medicines, and other and further medical attention in the future and will incur liability therefrom. The cost of further medical care and treatment is not known at this time, and Plaintiff alleges as damages herein the amount of such costs according to proof at trial.

## **FIRST CAUSE OF ACTION AGAINST DEFENDANT PRINCESS**
### **(Negligence-General Maritime Law)**

32. Plaintiff re-alleges paragraphs 1 through 31 and incorporates the same as a part hereof as though fully set forth herein.

33. As the owner and operator of the Vessel, Defendant PRINCESS owed Plaintiff a duty to exercise reasonable care under the circumstances to avoid causing her personal injuries. Defendant PRINCESS had a further duty to warn Plaintiff of any dangerous conditions which were known to Defendant PRINCESS or could have been known to them by reasonable inspection.

34. On or about January 28, 2023, during a medical visit aboard Defendant's Vessel, Defendant PRINCESS negligently owned, operated, maintained, controlled, supervised and inspected the Vessel, its gear and equipment, in a dangerous, unsafe, and defective condition and were negligent, careless, and breached their duty of care to Plaintiff by committing the following acts and/or omissions, including, but not limited to:

   a. Failure to properly examine, diagnose and promptly treat Plaintiff for her medical conditions while aboard the Vessel;

b. Failure to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances;

c. Failure to promptly identify a suitable facility ashore and medically evacuate Plaintiff so she could receive appropriate medical care for her condition;

d. Failure to hire competent and properly qualified ship's doctors and nurses;

e. Failure to hire properly licensed ship's doctors which had the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care, so as to be in violation of the law of the flag country with respect to the provision of medical services;

f. Failure to warn and/or disclose to passengers that the ship's doctors and nurses did not have the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care and were not competent and/or properly qualified;

g. Negligent reliance on the medical opinions and/or advice and/or instructions of the ship's doctors who were: (1) not properly qualified; and/or (2) failed to have the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care; and/or (3) were incompetent;

h. Negligent retainer of ship's doctors and nurses which were incompetent and/or did not have the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care;

i. Failure to use reasonable care to provide and maintain an adequate ship's medical facility, fit with proper, competent and adequate crew;

j. Failure to adequately equip and maintain its medical facilities with the proper equipment needed to adequately test, diagnose, treat and care for passengers;

k. Failure to provide adequate training, instruction and supervision to crew members, particularly medical staff assure that they were competent in testing, diagnosis, evaluating, monitoring, treating and caring for passengers;

l. Failure to have and/or implement proper and adequate policies and procedures and/or equipment in effect to properly handle Plaintiff's medical condition;

m. Failure to promulgate and/or enforce policies and procedures aimed at hiring and/or retaining competent medical personnel; and

n. In other manners expected to be discovered during the course of ongoing investigation and discovery.

35. At all times material hereto, Defendant PRINCESS knew of the forgoing conditions causing Plaintiff's injuries and damages and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care and inspection under the circumstances should have learned of them and corrected them.

36. At all times material hereto, Defendant PRINCESS negligently failed to determine the hazards on the Vessel to Plaintiff, failed to eliminate the hazard and failed to properly warn Plaintiff of the hazard. All of the above caused the Plaintiff to be injured and/or which caused the Plaintiff's injuries to be aggravated and made worse.

37. In light of their knowledge, Defendant PRINCESS, negligently failed to hire, train, and/or retain competent physicians and nurses, and instead, negligently hired and retained incompetent and/or unqualified persons to act as ship's physician(s) and nurses who caused Plaintiff injuries and failed to properly and/or timely examine, diagnose and/or treat Plaintiff's medical condition.

38. As a direct and proximate result of Defendant PRINCESS' breach of duty of care owed to Plaintiff, Plaintiff was injured and suffered damages as aforesaid.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT VAN ZYL AND DOES 1 THROUGH 10

### (Negligence-General Maritime Law)

39. Plaintiff re-alleges paragraphs 1 through 31 and incorporates the same as a part hereof as though fully set forth herein.

40. At all times relevant to this action Defendant VAN ZYL and Does 1 through 10, were acting within the scope and course of their role as shipboard physicians, nurses, and medical staff aboard the Vessel.

41. At all times relevant to this action, Defendant VAN ZYL and Does 1 through 10, owed Plaintiff a duty to provide her competent, reasonable, prompt, proper, and appropriate medical care.

42. As the physician that treated Plaintiff, Defendant VAN ZYL owed Plaintiff a duty to also supervise the medical care and treatment rendered by nurses and other medical personnel under her authority in the medical center.

43. On or about January 28, 2023, during a medical visit aboard the Vessel, Defendant VAN ZYL and Does 1 through 10, either personally or as a result of the acts or omissions of the other staff in the medical facility under their authority for which they were responsible, breached their duty to exercise reasonable care under the circumstances owed to Plaintiff and were negligent and careless by committing the following acts and/or omissions, including but not limited to one or more of the following ways:

   a. Failing to properly obtain Plaintiff's complete medical history;
   b. Failing to properly and adequately examine Plaintiff;
   c. Failing to properly and timely assess and diagnose Plaintiff's condition;
   d. Failing to properly treat and provide proper and adequate medical care to Plaintiff to avoid severe and permanent injuries to her;
   e. Failing to properly administer required medications to Plaintiff;

f. Failing to order appropriate diagnostic tests to further assess Plaintiff's condition;

g. Failing to promptly identify a suitable facility ashore and medically evacuate Plaintiff so she could receive appropriate medical care for her condition;

h. Failing to obtain consultations with appropriate specialists;

i. Failing to properly monitor Plaintiff;

j. Failing to properly supervise nurses and medical staff;

k. Deviating from the standard of care for patients in Plaintiff's condition who exhibit her signs and symptoms;

l. By breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider; and/or

m. In other manners expected to be discovered during the course of ongoing investigation and discovery.

44. As a direct and proximate result of Defendants' breach of duty of care owed to Plaintiff, Plaintiff was injured and suffered damages as aforesaid.

**THIRD CAUSE OF ACTION AGAINST DEFENDANT PRINCESS**

**(Negligence – Vicarious Liability Under *Respondeat Superior*)**

45. Plaintiff re-alleges paragraphs 1 through 31 and incorporates the same as a part hereof as though fully set forth herein.

46. At all times herein material, the doctors and nurses aboard the Vessel were the agents, apparent agents, servants, and/or employees of Defendant PRINCESS, which was therefore vicariously liable for the negligent treatment of Plaintiff under the legal principles set forth in *Franza v. Royal Caribbean Cruises Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

47. At all times material hereto, the vessel's doctors and nurses were subject to the control and/or right to control by Defendant PRINCESS.

48. At all times herein material, the doctors and nurses aboard the *Royal Princess* were acting within the scope of their employment and/or agency.

49. At all times herein material, the vessel's doctors and nurses owed a duty to provide Plaintiff with reasonable care under the circumstances.

50. On or about January 28, 2023, during a medical visit aboard the Vessel, Defendant VAN ZYL and Does 1 through 10 either personally or as a result of the acts or omissions of the other staff in the medical facility under their authority for which they were responsible, breached their duty to exercise reasonable care under the circumstances owed to Plaintiff and were negligent and careless by committing the following acts and/or omissions, including but not limited to one or more of the following ways:

   a. Failing to properly obtain Plaintiff's complete medical history;
   b. Failing to properly and adequately examine Plaintiff;
   c. Failing to properly and timely assess and diagnose Plaintiff's condition;
   d. Failing to properly treat and provide proper and adequate medical care to Plaintiff to avoid severe and permanent injuries to her;
   e. Failing to properly administer required medications to Plaintiff;
   f. Failing to order appropriate diagnostic tests to further assess Plaintiff's condition;
   g. Failing to promptly identify a suitable facility ashore and medically evacuate Plaintiff so she could receive appropriate medical care for her condition;
   h. Failing to obtain consultations with appropriate specialists;
   i. Failing to properly monitor Plaintiff;
   j. Failing to properly supervise nurses and medical staff;

k. Deviating from the standard of care for patients in Plaintiff's condition who exhibit her signs and symptoms;

l. By breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider; and/or

m. In other manners expected to be discovered during the course of ongoing investigation and discovery.

51. As a direct and proximate result of the vessel's doctor's and nurses' negligence, for which Defendant PRINCESS is vicariously liable on the theory of *respondeat superior*, Plaintiff was injured and suffered damages as aforesaid.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANT PRINCESS**

**(Negligence – Vicarious Liability Under Apparent Agency)**

52. Plaintiff re-alleges paragraphs 1 through 31 and incorporates the same as a part hereof as though fully set forth herein.

53. At all times herein material, Defendant PRINCESS held out its medical staff including its doctors and nurses, as being its employees who work in the Defendant's medical centers aboard its Vessel, promoted its medical staff as being its employees in brochures, internet advertising and on the Vessel, and held out its staff, including Defendant VAN ZYL and Does 1 through 10 as being direct employees or its actual agents.

54. At all times herein material, the vessel's doctors, nurses and paramedics, including Defendant VAN ZYL and Does 1 through 10, were represented to the Plaintiff and the ships' passengers as employees and/or agents and/or servants of Defendant PRINCESS, in that:

a. They worked in the ship's medical facility aboard the vessel, which was owned and operated by Defendant PRINCESS;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    b. They wore a ship's uniform provided by Defendant PRINCESS;

    c. They represented themselves as the "ship's medical crew" to the Plaintiff;

    d. The vessel's doctors were called ship's officer(s) by Defendant PRINCESS, the ship's officers and the crew;

    e. They ate with the ship's crew;

    f. They were under the commands of the ship's officers and followed all of the master's rules and regulations;

    g. Their charges for medical treatment are charged to passengers' onboard accounts and are paid to Defendant PRINCESS;

    h. The literature provided by Defendant PRINCESS and its representatives showed the doctor(s) and/or nurse(s) as crewmembers and employees of PRINCESS;

    i. There were PRINCESS insignias in various places inside the ship's medical facility where the vessel's doctors, nurses and paramedics worked;

    j. They were employed full-time by Defendant PRINCESS;

    k. They were paid a salary by Defendant PRINCESS; and

    l. They spoke to Plaintiff as though they had authority to do so by Defendant PRINCESS.

55. It was reasonable for the Plaintiff to believe that the vessel's doctors, nurses and paramedics, including Defendant VAN ZYL and Does 1 through 10, were PRINCESS' agents because they wore ship's uniforms and admitted Plaintiff to the ship's medical facility. In addition, at all times material hereto, the vessel's doctors, nurses and paramedics spoke and acted as though they were authorized to do so by PRINCESS.

56. At all material times hereto, Plaintiff reasonably relied on the representations of Defendant PRINCESS and the vessel's doctors, nurses and

paramedics (that they were employees and/or agents and/or servants of PRINCESS) to her detriment.

57. At all times material hereto, Defendant PRINCESS knew of the Vessel's doctors', nurses and paramedics' agency representations and allowed them to represent themselves as such.

58. Defendant PRINCESS is estopped from denying that the Vessel's doctors, nurses and paramedics, Defendant VAN ZYL and Does 1 through 10, were their apparent agents and/or apparent employees and/or apparent servants.

59. On or about January 28, 2023, during Plaintiff's medical visit aboard the Vessel, the Vessel's doctors breached their duty to provide reasonable care under the circumstances by:

    a. Failing to properly obtain Plaintiff's complete medical history;

    b. Failing to properly and adequately examine Plaintiff;

    c. Failing to properly and timely assess and diagnose Plaintiff's condition;

    d. Failing to properly treat and provide proper and adequate medical care to Plaintiff to avoid severe and permanent injuries to her;

    e. Failing to properly administer required medications to Plaintiff;

    f. Failing to order appropriate diagnostic tests to further assess Plaintiff's condition;

    g. Failing to promptly identify a suitable facility ashore and medically evacuate Plaintiff so she could receive appropriate medical care for her condition;

    h. Failing to obtain consultations with appropriate specialists;

    i. Failing to properly monitor Plaintiff;

    j. Failing to properly supervise nurses and medical staff;

    k. Deviating from the standard of care for patients in Plaintiff's condition who exhibit her signs and symptoms;

  l. By breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider; and

  m. In other manners expected to be discovered during the course of ongoing investigation and discovery.

60. As a direct and proximate result of the vessel's doctor's and nurses' negligence, for which Defendant PRINCESS is vicariously liable on a theory of apparent agency and/or agency by estoppel, Plaintiff was injured and suffered damages as aforesaid.

## **PRAYER**

WHEREFORE, Plaintiff SUSAN B. HODGE prays for damages against Defendants, and each of them, as follows:

1. For general damages according to proof;
2. For medical expenses, past and future, according to proof;
3. For prejudgment interest;
4. For costs of suit; and
5. For other such relief as the Court may deem proper.

///
///
///
///
///
///
///
///

# DEMAND FOR JURY TRIAL

Plaintiff SUSAN B. HODGE hereby demands trial by jury of the above-captioned matter.

Dated: January 23, 2024

LAW OFFICES OF
AKSANA M. COONE

LAW OFFICES OF
CHARLES D. NAYLOR

By: */s/ Aksana M. Coone*
Aksana M. Coone
Charles D. Naylor
Attorneys for Plaintiff,
SUSAN B. HODGE